The Honorable Court is now in session. Good morning again. Please be seated. And we welcome Judge Chen and we turn to him for a motion. Thank you, Chief Judge Prost. This morning I'd like to move the admission of Lauren Jarvis-Dryer who is a member of the Bar and is in good standing with the highest court of Virginia. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. The basis of my knowledge of this is that Lauren has been my clerk for the past 14 months and she is the last of the originals, the first group of clerks I ever had. And she has done a tremendous amount of work in helping to build our chambers. It's very hard to say goodbye to Ms. Dryer, but I'm really convinced that she will be a great asset to the Bar, not only because she has all the great traits of being an excellent lawyer, but also because she just has a terrific positive personality. So I know she's going to serve the Bar very well with great class and distinction. So I urge you to grant my motion. Well, to be honest, it's kind of hard to get by these images we have of people in Halloween costumes for last Friday. But having succeeded that, I would just add my admiration for Lauren and for her good work and my gratitude for her service. So the motion is granted. When she stands. Thank you. The next case for argument this morning is 14-1323 T. Schott v. Green Mountain Coffee. Whenever you're ready. May it please the Court. T. Schott appeals from the lower court's grant of summary judgment. We ask that this Court reverse that grant, correctly construe the sealed body limitation and remand this case for further proceedings. T. Schott owns the 672 patent, which is directed to a system and a method for producing a tea extract using a coffee brewing machine. T. Schott accuses defendants of direct and indirect infringement due to use of accused K-cups in that brewery. The accused K-cups are designed to operate in a crude brewer where a hollow needle surrounded by an O-ring is designed to pierce the top of the K-cup, seal that piercing spot, perforating the foil lid of the K-cup. When that occurs, the tea composition meeting claim requirements, which is inside of the K-cup, is present in the compartment of the sealed body. Can I just sort of see if I'm understanding this right? Is the heart of the dispute here whether or not the top layer is water permeable and whether it is water permeable where it's necessary to puncture a hole in order to get the water through? That is what it seems to have boiled down to for this part of the case, yes. We've got literal infringement and doctrine of equivalent infringement on that issue. Although the doctrine of equivalent issue is kind of contested, right? Whether it's even fairly part of the case anymore. It is. Well, based upon what the district court had found, the district court applied a Rule 37 sanction and took doctrine of equivalent out of the case. We are appealing that decision. The reason we are appealing that decision is the way the court applied or got to the Rule 37 sanction was by understanding or coming to the conclusion that infringement contentions required by a pre-markman scheduling order were tantamount to, I'll get to the exact language, but basically tantamount to an interrogatory. Then the court said, so this is an interrogatory, now we're going to take this interrogatory and you've got an obligation to seasonally supplement interrogatory responses if they weren't correct. Then the court said I don't believe you have seasonably supplemented and as a result I don't see any evidence in the record that you had a good faith basis for doing what you did. But the district court did in her narrative, I understand that she cited certain provisions and not others, but in her narrative she did talk about not being responsive to the scheduling order. That is called out at least in the opinion. Even if you're correct that it's a matter of relying on the wrong provision, the intent is clear, is it not? I don't believe it is clear at all. The scheduling order said produce a claim chart with infringement contentions at the point in time. This is before the markman hearing, very early in the case, before theories are developed, before depositions have occurred, before interrogatories have been propounded. At that point in time we were asked to give a claim construction chart with infringement at the markman hearing so that the parties could understand what they were arguing about as far as claim terms go. On that point we produced and prepared and filed the claim charts. The scheduling order, however, didn't have any statements about what those charts should look like. This district has no had no rules, local patent rules explaining what needed to be in claim charts. No, but the scheduling order required you to identify your infringement contentions. It's clear that if you're going to allege literal infringement, you need to identify that. If you're going to allege doctor of equivalence infringement, you have to identify that. Anyone, it seems to me, would know those are your infringement contentions. At what point in time did you think it other side known that that was your infringement contentions since that's what you were required to disclose, your infringement contentions by the scheduling order? We disclosed in the scheduling order itself that doctor of equivalence was going to be an issue in the case. We disclosed our position. In your contentions you expressly identified the doctor of equivalent? It was actually in the scheduling order itself that set the requirement to propound infringement contentions. It was right there. On page 57, page 15 of the district court's opinion, he says rather plaintiff waited until the close of fact discovery on April 19, 2013 to finally include the doctor of equivalence in its supplemental infringement contentions. However, even that disclosure failed to include any details regarding the DOE theory. The first detailed explanation was not served on defendants till April 30, 2013. Is that right or wrong? That is I don't believe that is entirely correct because in the early scheduling order, an identification... Well, if we defer to the district court on his findings in that is that the end of it? No, I don't believe so. Why not? We were never given notice that the district court was considering infringement contentions to be interrogatory responses. The defendants did not move for a sanction under Rule 16 or Rule 26 or Rule 37. It was under local rule practice. We responded to what the defendants had argued. Through that response, we never identified Rule 16, Rule 26 or Rule 37 issues because they were never raised. What happened in this case is we had the pre-Markman scheduling order. We had the Markman hearing. We received a Markman ruling. As a result of the Markman ruling, we propounded updated infringement contentions based upon the rulings. We asked for depositions of defendants' party. They said they're not available until next April. We said fine, we'll take their deposition when they're available. We took their deposition when they were available and then within 30 days of that date, we filed the supplemental infringement contentions. On the last day of fact discovery? It was on the last day of fact discovery, which is the exact same day that the defendants filed their supplemental preliminary invalidity contentions. What was the nature of those because the district court describes them as no details regarding your theory? We thought they were fairly robust. Can I go back to the infringement theory here to the first point you were making? Is it your view that reading a punctured water permeable foil on the top is consistent with the sealed body limitation in the claim? If so, how so? It is and because the punctured spot is with an O-ring that goes around the needle. You've got a puncture, an O-ring, and the O-ring seals it. But it says the limitation requires the sealed body constructed of water permeable material. It doesn't say the lid is water permeable because a lid with holes in it would be water permeable. The holes would allow the passage of water. But it doesn't say the lid is water permeable. It says the material that the body is composed of, constructed of, is itself water permeable. I don't see how it's become water permeable material. No, I don't see how it's become water permeable material. It's become a water permeable lid. It is a structure that is water permeable. But I don't see how the aluminum foil itself the foil, not the hole in the center of the foil, but the foil I don't see how that material, because that's the foil, is water permeable. I understand the position. We believe that it is upon puncture. Now, that raises another question about what does the claim require? Does the claim actually require that water flow into the sealed body through water permeable material? We don't believe it does. We don't believe the claim language supports that requirement. We don't think the specification, and certainly not the file history, supports that requirement. And your DOE theory under this claim construction, presumably it was created under this claim construction was what? I mean, if the district court's construction is correct, how do you avoid either vitiation or function way results or whatever to get around to say there's somehow a DOE claim here? So in the vitiation argument, you've got as we understand the case law, it's creating, really using a product in a way that it was not designed to be used. It's just unreasonable to think that someone is going to un-weld a metal piece from another piece or un-solder something from some other piece. Here, what we've got is the product is unusable until that lid is pierced. It is designed to be pierced. It is a foil lid that is of a size, shape, configuration that must be pierced. Water has to get into the piece. When that happens, that water can contact the T particles and create the essence of T, so the essence of leach into the water and then makes the T extract and then that is able to... You realize that even if you're correct about what you're saying, that it is the consumer that then constructed a sealed body of water permeable material because maybe, I don't know, maybe, I know, I think you actually did allege somewhere that they tested the material internally. Even if you're right about your construction, the only damages you can get against them for infringement, it seems to me, are testing the material because you didn't allege inducement. No, we didn't. We have alleged inducement and that is front and center, absolutely. The evidence that we were able to gather indicates that they test virtually every run of their products. There is quite a bit of testing internally that they are, in fact, doing. What if the accused product, the way it worked is you had to rip off that top lid or maybe you ripped off half of the lid so that water, hot water, could get pulled through the T. Would that be infringing your claim? It would depend on what's on the inside, what the T particles were, how many T particles... Everything else is there? Except instead of using a needle to puncture through that top lid, the consumer is now ripping that lid off or maybe ripping 80% of it off. So there's still a little bit of lid there. Is that going to infringe your claim? If it is sealed, and remember what sealing means in the context of this patent is that when it's being used, when this container is being used, the T particles are not escaping into the cup of tea. So if in your example there is some T particles inside of the container, then I would say yes. If, on the other hand, that removal of the lid partially or wholly does not seal or the system in which it's operating is not sealed, then I would say no. And that's why the O-ring and the configuration of the brewer, and that's why the claim that we have made where it is the system of the teacup with the brewer is the infringement. Just curious, what's the difference between your teabag and a regular teabag? The sealed body. It's the configuration it really is the T, the size and the amount. It's the stuff inside the bag, not the bag itself. That's correct. And I see that I'm well into my removal. Thank you. Mr. Alpert. Thank you, Your Honor. May it please the Court. The district court's claim construction was correct, and that inevitably led to the summary judgment ruling, which was also correct. The core issue here is whether the material that seals the lid of the accused portion pack, that plasticized foil, is a water-permeable material. And T-Shot's inventor, CEO and 30b-6 witness, Mr. Cooper, admitted at his deposition that it was not. And the position that T-Shot is taking now is that if you put a single large hole through an otherwise impermeable material, that it becomes a water-permeable material. There are three basic problems that I'd like to address with that argument. First, that simply isn't the ordinary meaning of the term water-permeable. No one would say that this plastic water bottle is made out of a water-permeable material just because it has an opening at the top through which I could pour out the water. That's just not the ordinary meaning of the phrase water-permeable. The material itself remains an impermeable plastic. And the same is true about the lid of the K-cup pack that's at issue here. It's an impermeable plasticized foil. Just because it has a hole punched through it during use doesn't change what the material itself is. It doesn't turn it into something like filter paper or wire mesh. The second problem with T-Shot's argument is the language of the claim itself. The claim says that the sealed body is constructed of a water-permeable material which allows flow of a fluid through the sealed body. Now, T-Shot's proposed construction here would give no weight or meaning to the phrase water-permeable because, as far as they're concerned, you could take those words out of the claim and it would have exactly the same scope. The claim could have just said, a material which allows flow of a fluid through the sealed body. According to T-Shot, that would necessarily be a water-permeable material. So there would have been no need for the patentee to add the words water-permeable. That limitation would carry no weight, which is presumptively incorrect under this court's precedence. For example, as this court held in cases such as Helmsdorfer, different claim terms are presumed to have different meanings. And, in fact, this exact issue came up in a case before this court in Kanteck where this court held, and this is a quote, a person of ordinary skill in the art would recognize a distinction between a water-permeable surface and a water-impermeable surface with a discreet opening. It's non-presidential. It is a non-presidential decision. It just happens to be the one time that this court has addressed the issue, but it is non-presidential. What about the figure 4 embodiment? The figure 4 embodiment doesn't change the... Is that encompassed by this claim? It is, Your Honor. The figure 4 embodiment does not change the analysis. In figure 4, you have, first of all, figure 4 does not... That material, though, that's in the figure 4 embodiment, that material is not water-permeable, right? Well, no. The bottoms of the trays in the figure 4 embodiment are actually like a wire mesh. They're like a colander. They are actually a water-permeable material. It's an opening. It has a number of holes in it, and so therefore it's like a mesh material or a colander type of material. So that actually, and besides the patent doesn't actually describe figure 4 as such? It's not. I didn't see that in the spec. Yeah, column 3 appears to be describing figure 4. How do you know that the bottoms of these containers are some fine mesh? There are two possibilities. One is we don't know that, in which case it proves nothing. The other is we assume that based on the way it's described in column 3 because the idea seems to be that you put these three trays into the machine and then the liquid flows through them, in which case there's some holes, mesh type material in the bottom. But that's an inference. Well, that's one. Another inference is there could be puncture holes. There could be. And again, if you have a material with multiple puncture holes in it, a case can be made that that is a water-permeable material. But a single hole... Well, doesn't that go against your theory of why you're accused products with a lid that gets punctured? I don't believe so. You're saying that figure 4, if the design of the figure 4 bottoms have punctured holes so that water can filter through is encompassed by the claim? Do you understand why I'm a little confused? I do, Your Honor. I think it comes down to a line drawing question. And fortunately, it's not one that this Court needs to resolve because I think it's clear that a single opening does not make this plastic bottle into water-permeable material. Now, what if it had 100 or 200 little holes in it? Then might you argue that it was like a mesh or like a filter paper, which itself really is fabrics or fibers with holes in between them? An argument could then be made that, yes, it's like a colander or it's like a mesh. And then I think that would be a closer case. But that's not the case we have here. You would think that figure 4 is not encompassed by claim 1. Well, we would argue that the figure 4 embodiment is a material that has a number of holes in it. Does figure 4 even show sealed bodies? It does not, Your Honor. What figure 4 actually is described as is that it is the T-extraction system. There's the T-extraction system and there's the sealed body. It appears, it's really not clear, it's fairly indefinite the way it's described, but it appears that the idea is that you put a sealed body like a teabagger does that into those trays. And so those trays are not actually the sealed bodies themselves. They're what's referred to as the T-extraction system. So, then T. Schott falls back on, oh, and the final point I wanted to make. But figure 4 doesn't actually disclose any, there's no pictured sealed bodies. How do we know whether the sealed body, when used, would be water permeable or not? We don't, but we can't tell from see. I really don't think you can draw any inferences about the claim construction from figure 4. Can you tell me what what you think it means at the top of column 8 when talking about figure 4? There's a reference to sealed bodies in the figure 4 embodiment. So there's something Let me just read the sentence. We have another embodiment of the present invention. A T-extraction system can be configured as a rigid container having multiple T-extraction containers. I think that T-extraction container is a phrase in the claim, correct? Yes. Connected to each other at the side of the sealed bodies from top to bottom. What do you think I'm supposed to think about the reference to sealed bodies in that sentence? This is a question that I've struggled with throughout this case. I think there's some confusion here, and I think there's some indefiniteness as to what's going on, which is part of why I don't think figure 4 really leads us to any conclusion. I think the first line in column 8, where it refers to it as multiple T-extraction containers is what was intended. Each of those three trays is not itself a sealed body. A sealed body like a teabag or a dosette might go into one of those trays. I think it's referring to them as T-extraction containers. But there's confusion of the terminology here, because as Your Honor points out, in the second line of column 8, it then talks about at the side of the sealed bodies. There's no indication what the sealed bodies are, what the side of it refers to. But in any event, it doesn't get them where they need to be. Because even if you assume, for the sake of argument, that figure 4 and that the trays in figure 4 are sealed bodies, they still do not have the structure that we're talking about here with the K-cup pack. They don't have an impermeable material with just one single large hole poked through it like you might have at the top of a plastic bottle. So then you're saying figure 4 is not encompassed by claim 1. I don't believe it is encompassed, but I think an argument could be made that it is, but it doesn't get T-Shot where they need to be, even if that were the case. Can you turn, before your time runs out, to the question where you're asking your friend about security allegations and how the district court handles those? Yes, Your Honor. So T-Shot's fallback theory is doctrine of equivalence. And T-Shot plainly waived that argument below. And in fact, this issue is subject to review solely for abuse of discretion. And in fact, it would be hard to see how the district court could have come out any differently than what it did. The procedural history here is pretty straightforward. The parties stipulated and the court ordered in its scheduling order that by May 1st of 2012, T-Shot needed to disclose its infringement contentions. Nothing in the order said they were going to be preliminary. T-Shot tried to characterize them that way, but they can't modify unilaterally  and that order. So they were subject to an order to disclose by May 1st of 2012 what their infringement contentions were. On that required date, they provided the contentions, never disclosed DOE. It wasn't in the complaint either, by the way. The parties then took all the discovery in the case in light of those contentions. Now in March of 2013, almost a year later, T-Shot actually amended its contentions without permission of the court, but still did not disclose DOE. Only on the very last day of discovery, T-Shot finally disclosed it with just a bare allegation, no substance, and effectively ambushed the defendants from being able to take any discovery on the issue. Then the substance of their argument showed up for the first time in their expert report. Even accepting all of that, what we're left with is a problem or difficulty in terms of the court's reliance on certain rules, right? And it seemed to me you didn't really try to defend that with any particularity in your report. Well, Your Honor, we would argue that regardless of whether the court characterized it as a sanction under Rule 37, or as a waiver by T-Shot, which I think it was, of any DOE position, or simply as a 16-F enforcement of its scheduling order, it amounts to the same thing. Isn't there a notice problem or something? I mean, it may lose you win, sure. But isn't there some obligation on the district court for notice purposes and otherwise to rely on the right provision? And I think you're kind of conceding here, right? That reliance on 37C and 26E were not what we were really going for here, right? No, Your Honor. Respectfully, we don't concede that at all. On the contrary, we believe that under either scenario, the district court got it right. The district court's notice to T-Shot that they had an obligation to provide their disclosure happened in the scheduling order. That was all the notice that was required in order for them to be bound by that requirement. What the district court actually said is that he was going to treat the contentions as the equivalent of interrogatories. This court has held, I believe it was in the Woods case, that initial disclosures, contention interrogatories, and T-Shot should be binding, but in effect, that's simply the equivalent of saying it's a waiver of the DOE position for failure to disclose it at the time required by the court order. And it's hard to see how the district court could have done things any differently    because throughout the entire discovery period, they were on notice that they had this obligation. Had they wanted to amend, they could have tried to do it in a timely manner. For example, T-Shot cited the MIT versus Abacus case. That case is entirely different than the facts that we have here. In that case, the district court specifically said the contentions were preliminary, and then Sua Sponte converted them to final. And at the time that the plaintiff in that case wanted to amend its complaint to add the new allegations... Did you supplement your invalidity contentions on the last day of discovery, too? We did, Your Honor, but... And what happened? Did the district court say that was okay? They never asked the district court to strike that supplementation. They made a different request to the magistrate judge, which they never appealed to the district court, to strike a portion of the defendant's expert report. They never asked that the supplemental disclosure, which was a single piece of prior art, I believe, it was effectively cumulative, of art that they were already aware of. And part of the rationale for this sanction, or waiver, or whatever we're going to call it, was that your side would be prejudiced because this was supplemented, this contention was supplemented on the last day of discovery. Is that right? Yes, although... And then, so, what kind of discovery were you going to need to defend yourself against the DOE allegations? So, unlike the situation with the DOE, in which there was no fact discovery that would have been needed, it would have simply been expert disclosures, we, the defendants, would have actually needed some fact discovery relevant to DOE. For example, Mr. Cooper testified at great length, some of his admissions are a significant part of the record, we never had an opportunity to depose him about the DOE issues. One of the material issues in the DOE analysis would be, to a person of skill in the art, is there a substantial, meaningful difference with some material impact between a lid that is made out of an impermeable material and one that's made out of a permeable material? Considerable paper discovery as well as deposition testimony could have been taken on that issue. So, the district court got it right that we were prejudiced. Had T. Schott asked, which they didn't, to strike our supplementation on prior art, the district court indicated he would have done the same and stricken it. Although, even there, the facts are different, and in that case, there's a factual discovery, as the defendants did on DOE. In short, the claim construction and summary judgment were correct, because the material is not water permeable, even after a hole is pierced in it, like the top of a plastic water bottle, and the district court did not abuse its discretion in finding that T. Schott had waived the DOE argument. I don't have time to address, and I don't think the court needs to reach them, but I'm happy to answer any remaining questions, otherwise that's all I have. Thank you. I would direct the court's attention to column 3, lines 44 through 55. That section of the patent is about the figure 4 embodiment, and what's going on there is it says, the tea container of suitable dimension to fit within a conventional espresso machine, and then further down, it talks about, and then properly aligned in a vertical orientation to fit within the espresso receptacle. What that is explaining to a person of ordinary skill in the art, is that you're to take that figure 4 device, when you put it into the brewer, it sits snugly in there, and it creates the sealed body, because as the sealed body, as the court was pointing out, the sealed body reference comes from the bottom of column 7 and the top of column 8, where it specifically says that the figure 4 is connected to each other at the sides of the sealed bodies. What does that mean? Because when I look at your figure 4, I see a triple decker of containers, but what I don't see are sealed bodies constructed of a water permeable material in this figure. What am I supposed to be thinking here? The triple deck of containers are identified as tea extraction containers, element number 36. I don't see anything in figure 4 that has an element number pointing me to a sealed body. So I'm trying to understand what does that phrase, at the side of the sealed body, mean in that sentence at the top of column 8? Each of those extraction containers is a sealed body, but it only becomes sealed once you've put it into the brewer, as the bottom of column 3 suggests. I am out of time. I'm happy to answer any further questions. Thank you.